## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34397-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| FRANCISCO JAVIER | ) | |
| GUTIERREZ-VALDOVINOS, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Francisco Gutierrez-Valdovinos appeals his conviction

for theft in the first degree. He argues the conviction must be dismissed because the trial

court violated his CrR 3.3 right to a speedy trial. Alternatively, he argues he is entitled to

a new trial because a deputy sheriff offered improper opinion testimony and because he

received ineffective assistance of counsel when his attorney failed to object to the

improper opinion testimony. We disagree and affirm.

### FACTS

On April 22, 2015, Mr. Gutierrez-Valdovinos made a preliminary court appearance

on a potential charge of theft in the first degree. The trial court found probable cause to

detain Mr. Gutierrez-Valdovinos, entered appropriate orders, and released him on his own recognizance. The record reflects that Mr. Gutierrez-Valdovinos was out of custody at least until trial commenced.

Soon after the April 22, 2015 preliminary appearance, the State charged Mr. Gutierrez-Valdovinos with one count of theft in the first degree. The State alleged that Mr. Gutierrez-Valdovinos wrongfully obtained or exerted unauthorized control over cash in the amount of $6,000 from a check written on the account of Alta Lake Golf Course and later cashed.

The trial court arraigned Mr. Gutierrez-Valdovinos on May 4, 2015 and set a status conference for July 6. On that date and several times thereafter—including both December 1, 2015 and February 10, 2016—Mr. Gutierrez-Valdovinos signed the court's orders. Language above his signature stated that his signature acknowledged both receipt of the order and understanding that his failure to object within 10 days of receipt of the order waived any objection to the timeliness of the trial setting. In addition to these types of continuances, the trial court continued the trial date at least once due to the unavailability of a courtroom and twice due to the unavailability of different State witnesses. It is undisputed that Mr. Gutierrez-Valdovinos did not object to any continuance.

Trial commenced April 5, 2016. At trial, Deputy Ron Oules testified about his investigatory questioning of Mr. Gutierrez-Valdovinos. Deputy Oules stated that he and another officer drove to Mr. Gutierrez-Valdovinos's house, that he invited them inside, and that he admitted to cashing the $6,000 check. Deputy Oules responded to the State's questions about how Mr. Gutierrez-Valdovinos claimed he received the check:

> [STATE]: Did he tell, did he tell you where he got the check?
> [DEPUTY OULES]: He did.
> [STATE]: What did he say?
> [DEPUTY OULES]: He said he got it in the mail. And I, I asked him from who, there was . . . The answers, questions and answers, there was some voluntary answers pretty well, but then when there was pointed questions that were, I guess, I could call them more of a, of a . . . the answer would be a telling, you know, more specific about what you did, a lot of times there wasn't an answer, or you know, would just avoid answering that question. But generalized questioning, there was pretty free response.

1 Report of Proceedings (RP) at 193-94 (alterations in original).

Later, the State asked Deputy Oules:

> [STATE]: And, again, what did he say he thought it was from?
> [DEPUTY OULES]: From working at the golf course in 2003 or 2004.
> [STATE]: Okay.
> [DEPUTY OULES]: There was no other explanation. You know, I mean, "Well, was it for wages?" "I don't know. Maybe they just owed me the money or felt they need to give—" again, it was really generalized as where or how and why it came—

3

[STATE]: He didn't have a copy of an envelope that it came in or anything like that?

[DEPUTY OULES]: No, he didn't have anything like that.

[STATE]: Okay. Did you ask him what he did with the money?

[DEPUTY OULES]: I did.

[STATE]: And what was his response?

[DEPUTY OULES]: Again, those were the really evasive (sic), he just wouldn't answer. I had to probably press the hardest and try to get the information on that, and basically he came around to his words were he wasted it.

1 RP at 196-97.

The defense rested without calling witnesses. In closing arguments, the defense argued that Mr. Gutierrez-Valdovinos believed the check was a legitimate payment to him because he previously worked at the golf course.

The jury found Mr. Gutierrez-Valdovinos guilty of theft in the first degree, and he later was sentenced. This appeal followed.

## ANALYSIS

A.    ALLEGED SPEEDY TRIAL VIOLATIONS

Mr. Gutierrez-Valdovinos argues that the trial court violated his right to a speedy trial under CrR 3.3 for the December 1, 2015 and February 10, 2016 continuances. For the December 1, 2015 continuance, Mr. Gutierrez-Valdovinos claims that the trial court failed to adequately state its reasons for granting a continuance. Similarly, Mr. Gutierrez-Valdovinos argues that the trial court failed to find that the February 10, 2016

4

continuance was required in the administration of justice and that he would not be prejudiced.

We review alleged violations of the CrR 3.3 speedy trial rule de novo. *State v. Kenyon,* 167 Wn.2d 130, 135, 216 P.3d 1024 (2009). A defendant's right to a speedy trial is protected by both the federal and state constitutions and court rule. The constitutional right to a speedy trial is broad. It is generally only implicated when a long period of time passes between the filing of charges and trial. *See State v. Iniguez,* 167 Wn.2d 273, 217 P.3d 768 (2009).

Court rules are more specific and set forth standards for adjudicating cases under fairly short time frames. To preserve a CrR 3.3 speedy trial challenge to a specific trial setting, a defendant is required to move the trial court promptly after the challenged setting for an order setting the trial date within speedy trial limits. CrR 3.3(d)(3). A party who fails to file such a motion within 10 days from receipt of the challenged setting loses his right to object to the trial setting. *Id.*

Here, Mr. Gutierrez-Valdovinos signed that he received the December 1, 2015 and the February 10, 2016 orders resetting trial dates. The orders warned Mr. Gutierrez-Valdovinos that he waived his right to object to the new settings unless he objected to the new settings within 10 days of receipt of the orders. Mr. Gutierrez-Valdovinos never

5

objected to these or any other new settings. He, therefore, has waived his objections to these new settings.

B.     ALLEGED IMPROPER OPINION TESTIMONY[1]

Mr. Gutierrez-Valdovinos argues that Deputy Oules's testimony was improper opinion testimony about his credibility. Mr. Gutierrez-Valdovinos relies on *State v. Jones*, 117 Wn. App. 89, 68 P.3d 1153 (2003). There, the court held that there is no meaningful difference between allowing an officer to testify directly that he does not believe the defendant and having the officer recount that he told the defendant that he did not believe him during questioning. *Id.* at 92. We disagree that *Jones* is controlling.

"[T]estimony that is not a direct comment on the defendant's guilt or on the veracity of a witness, is otherwise helpful to the jury, and is based on inferences from the evidence is not improper opinion testimony." *City of Seattle v. Heatley*, 70 Wn. App. 573, 578, 854 P.2d 658 (1993). Here, Deputy Oules testified that Mr. Gutierrez-Valdovinos did not answer or directly answer some questions. This was a factual description, not an opinion. Toward the end of describing Mr. Gutierrez-Valdovinos's

---

[1] An appellate court may refuse to review any claim of error that was not raised in the trial court. RAP 2.5. Mr. Gutierrez-Valdovinos did not preserve this issue with an objection below. Nevertheless, we choose to review this claim of error so as to assist our discussion in the next section.

failure to answer questions, Deputy Oules stated that Mr. Gutierrez-Valdovinos was very

evasive. This descriptor is based on the facts described previously by the deputy. The

descriptor is not a direct comment on Mr. Gutierrez-Valdovinos's veracity. A person who

fails to initially answer questions can be described as evasive, even if that person

eventually provides truthful answers. Deputy Oules never expressed an opinion that he

thought Mr. Gutierrez-Valdovinos was lying.

C.    ALLEGED INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Gutierrez-Valdovinos next argues that he received ineffective assistance of

counsel by virtue of defense counsel's failure to object to Deputy Oules's testimony. We

disagree.

The Sixth Amendment to the United States Constitution guarantees a criminal

defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S.

668, 684-85, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "A claim of ineffective assistance

of counsel is an issue of constitutional magnitude that may be considered for the first time

on appeal." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). This court reviews

ineffective assistance of counsel claims de novo. *State v. Birch*, 151 Wn. App. 504, 518,

213 P.3d 63 (2009).

7

To prevail on a claim of ineffective assistance of counsel, a defendant carries the burden of demonstrating (1) the attorney's performance was deficient—that is, it fell below an objective standard of reasonableness, and (2) the deficiency prejudiced the accused—that is, absent the deficiency there is a reasonable probability that the result of the proceeding would have been different. *State v. Humphries*, 181 Wn.2d 708, 720, 336 P.3d 1121 (2014); *accord State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). "If either part of the test is not satisfied, the inquiry need go no further." *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

Because we have determined that Deputy Oules's testimony was not improper opinion testimony, Mr. Gutierrez-Valdovinos cannot demonstrate that defense counsel's performance was deficient by his failure to object. Therefore, Mr. Gutierrez-Valdovinos's ineffective assistance of counsel claim fails.

D.    APPELLATE COSTS

Mr. Gutierrez-Valdovinos requests that should he not substantially prevail on appeal, no appellate costs be authorized under RAP 14.2. The State takes no position.

8

RAP 14.2 governs the award of appellate costs. The rule generally requires an award of appellate costs to the party that substantially prevails. RAP 14.2. The rule permits an appellate court, in its decision, to decline an award of appellate costs or to direct a commissioner or clerk to decide the issue. *Id.* A commissioner or clerk is precluded from awarding appellate costs if he or she finds that the defendant lacks the current or likely future ability to pay such costs. *Id.* If a trial court earlier found that the defendant was indigent for purposes of appeal, that finding continues unless the commissioner or clerk determines by a preponderance of the evidence that the defendant's financial circumstances have significantly improved since the earlier finding. *Id.*

We defer the issue of appellate costs to our commissioner. Because the trial court found that Mr. Gutierrez-Valdovinos is indigent for purposes of appeal, that finding continues unless the commissioner finds by a preponderance of the evidence that Mr. Gutierrez-Valdovinos's financial circumstances have significantly improved. In the event the State seeks an award of appellate costs, we direct our commissioner to enter an order consistent with RAP 14.2.

No. 34397-9-III
*State v. Gutierrez-Valdovinos*

CONCLUSION

We affirm Mr. Gutierrez-Valdovinos's conviction.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, C.J.

Korsmo, J.

10